Good morning, your honors. And may it please the court, my name is Gil DeFord. I represent the plaintiff appellate Howard Back. Mr. DeFord, could I ask a preliminary question? And that is, are you still contending that there in fact is no appeal process, or are you contending that it works so badly in Mr. Back's case that it effectively does not exist? The former, your honor, we don't believe there is an administrative review process for people in this situation, for Medicare beneficiaries in this situation. And this situation is, I would not say unique, but it's somewhat unusual because it does not involve traditional Medicare coverage. It involves a hospice, which is a provider, failing to provide a service which the beneficiary claims the hospice is obligated to provide under the care plan that's been established. You have the – you cited the manual, the – one of the manuals. Let's see. The Medicare Claims Processing Manual, your honor. Yeah. There's section 210 of that as to who may appeal. Yes. That one – that's – And it says, 210, who may appeal, a beneficiary. There is one – a beneficiary can appeal in some situations, but not in this particular situation. Okay. Well, Ken, maybe it would be helpful just to go through and explain to us why not, because if one looks at the CFRs, first of all, the Secretary stipulated that there is, so that we can – that we can get to that. But I'd just like to understand the nature of your argument, because I'm looking at 42 CFR 405924B, okay, and that says claims made by or on behalf of beneficiaries. Does that apply to this case? No, it does not, your honor, because it – Why is that? Because this situation involves a hospice which is denied a service. This is not, as I said, a typical Medicare coverage situation. Well, how is that excluded from a regulation? Because the Medicare Claims Processing Manual, your honor, does not include this kind of situation allowing an appeal. Where does it exclude it? It's not covered under the Medicare Claims Processing Manual, which is the day-to-day operative manual for how claims processing is carried out. It only allows claims involving the hospice itself. Well, isn't this a regulation? The regulation is the general regulation covering the process. Why doesn't – why isn't the regulation in control? Because the regulation simply sets out what the law should be. And that's the law. That's the law, but as a matter of fact, your honor, there is no process in this context. Well, I mean, this is absurd. They say there is. The regulation says there is. And you say there isn't. I say there isn't for several reasons, your honor. The first one is that Mr. Back himself, the plaintiff, went through this extraordinary effort to get his claim heard, to have an appeal, and that was denied repeatedly. Well, that's Judge Ritzner's question, you know. And you said, no, no, it wasn't that. But I think – I'm trying to answer that. The reason that that's probative is that he made such an extraordinary effort and he tried three different entities. He tried the hospice itself. We understand the record on it, but, you know, and there's a lot of what the government would have to do to explain why their own agents didn't seem to understand the procedure. But the question is, fundamentally, as Judge Ritzner opened rightfully, the question, what are you seeking in this case? Your client has been given the opportunity, as I understand it, to pursue the appeal as to whether he gets reimbursed. You're making a systemic claim, and we're all sitting here with the regulations in front of us, and you're telling us that they don't cover hospice reimbursements. They don't cover this situation where the hospice itself – Well, explain – counsel, explain in the sequence of regulations what you're relying on for that. I'm relying on the Medicare claims processing manual, which sets out – The one that I just cited? That's one of them. Okay. Where does it exclude hospice? It doesn't exclude, but the only situation it sets out which allows for appeal is in the context of the hospice itself, the periods of hospice used. It's a question of whether the hospice will be allowed to be covered, whether the hospice – Why does it say, who may appeal, and then say, a person or entity with the right to appeal, in an initial determination, is considered a party to the redetermination, as cited in the CFR, referred to in the remainder of these instructions as a party. These include a beneficiary. Your Honor – Is the hospice a beneficiary? The hospice is not a beneficiary. It's a provider. But is your client a beneficiary? Yes. Okay. So where does this say it excludes hospice? What I'm trying to say, Judge Fischer, is that we don't dispute that the regulations and the statute should permit an administrative process in this situation. We're disputing the fact of it. There isn't any. They've never set one up. And the Medicare claims processing manual is the vehicle by which individuals, providers, beneficiaries, whatever it happens to be, have their claims dealt with. And the claims processing manual does not allow for an appeal in this situation. Did you seek to go through the CFR steps? I know what the CFR says, Your Honor. Did you seek on behalf of your client to approach the agency and go through at any time, go through the steps that are laid out in the CFRs? We never had that opportunity, Your Honor. That was the first step that we were That's the first step in the process. And without that, you can't go anywhere in the process. That's what Mr. Back was repeatedly trying to do. Then tell us what you think happened on the part of the Secretary, which my understanding is that there was a stipulation by the Secretary. They corrected the error purported to of the agencies. So what more relief do you need on behalf of your client? Mr. Back was not simply attempting to get relief for himself. He was attempting to correct Just for himself. Okay. If he got it for everybody else, was he able to get a hearing? Was he able? Yeah. Is there some process where he can get into what appears to be the process? Is that at least as far as his claim is concerned? The Secretary offered, after the case was filed, to let him have a hearing. Okay. But it's our view that that was something specific to him and was simply attempted to make the case go away. What Mr. Back was after, as the complaint sets out clearly, was declaratory and injunctive relief to create a process for this circumstance. All right. So specifically, what would you ask this Court to publish an opinion on behalf of hospice beneficiaries that does not exist already in the regulations? We're not asking for anything at this time, Your Honor, but to remand the case. I understand. But, you know, if it's not now, later. So there's no process. So I don't know how you expect this Court to do something if Mr. Back is going to go through the process that they, you say, tailored just for them. Then your case is moot because they've given it to him. So what is it that keeps this case alive for us to do the systemic rulemaking that you seem to say is required? Well, Mr. Back has not accepted the offer that was made to him because that was not the goal of his lawsuit. He very specifically sought to change the system to create a process. Okay, Counselor, you're wrestling with me. I'm trying to get your position. I'm sorry. I'm not trying to, Your Honor. I'm not trying to. I asked you what you would like us to write. What is the relief that predicate of his lawsuit would be from our Court? What do you want us to say? Well, the relief I'd like from this Court is to send the case back to the district court. And then I would like... Then what do you want the district court to say? The district court would issue declaratory and injunctive relief to the Secretary... Yes. ...requiring the establishment of a process that had notice and review rights for beneficiaries who were denied hospice services by a hospice. And if the Secretary comes back and says, these are set forth already in the CFRs, your response would be what? They are set forth in the CFRs. We're in agreement what the law is. We're in disagreement that, in fact, that's what happens. That's the whole issue. So I'm trying to save the district court in this case, Judge Phillips. The problem of having to figure out what you want and what she's supposed to say on remand from this Court, what is she supposed to tell the Secretary? To change the manual? Yes. Okay. So it's the manual that's the problem. The process exists. It hasn't been translated into practice. It has not been translated into practice for this group of people who are trying to get a service from a hospice. Okay. Why don't we let...hear from the government so we can get it focused as to what they think they've done, and then that will help us narrow the issues. Thank you, Your Honor. Okay. Thank you. We're not unsympathetic, believe me, to Mr. Back. But we don't want to be legislating from the bench or regulating. Good morning. I'm Stephanie Marcus from the Department of Justice, and I represent Appali Kathleen Sebelius. This Court has already gotten to the crucial problem with Mr. Back's case. In this case, he purports to just be seeking an administrative process, which the Secretary has already provided. It's not only required by law and by the regulations, but the Secretary has represented that it is available to him. The Secretary even gave him the form and told him the correct contract terms. Did the Secretary also fill in the agencies that stood between him and that relief, who told him that he didn't have all those rights? Well, I don't know what communications, you know, took place in this specific case with the hospice and the contractors. Well, it's a matter of record. I mean, he had some letters, didn't he? Yes, he did. And we are certainly not unsympathetic to what he went through there also. Why are they off the page? And how did they get off the page? I mean, his complaint seems to be, you know, the CFRs are there, but it's a closely held secret, which, you know, the people that they have to deal with don't seem to know. And that's very frustrating in this Medicare field, obviously, especially hospice. Yes, and we can understand that frustration, and the errors were certainly unfortunate. And for that reason, the Secretary has stated that there's normally a time limit for presenting the claim to the Secretary in the correct forum, and that, you know, that Mr. Beck is still at this point free to go do that, even now. And we would refer the Court to Illinois Council, the Supreme Court case, which is directly on point here, because in that case, the Supreme Court rejected a very similar argument. The respondents there said, well, there, you know, there may be an administrative process required by law, but in practice, the Secretary isn't honoring that, and it's in practice the Secretary is not making that available. And the Court said that, rejected that based on the Secretary's reputation of that point and the Secretary's statements in her brief in the Supreme Court. And here, again, not only do we have the statements in our brief, but we have provided the correct information now, and we have said that the time, that his time has not run out to file the claim. That's good for him. What, you know, the thrust is of his argument is, look what he had to do to get that kind of clarification. So what is the Secretary doing to make sure that this doesn't happen again? Well, Your Honor, I think he has not come forward with any – this isn't a class action. There aren't any instances of other plaintiffs having this problem. And it's analogous more to this Court's decision in Kildare. Is your answer that the Secretary is doing nothing? Well, Your Honor, I'm – there's – we acknowledge individual problems in this case, certainly with this – But don't you think you ought to be taking affirmative actions to do something about it? Can't you tell us that? Can't you make some representation of that effect? Your Honor, I – I don't know if – Well, you ought to know. Well, I – again, I don't think – again, I don't think he has shown more in this lawsuit than individual isolated problems. It's one person who had a very unfortunate series of mistakes made by the hospice and contractors, but there isn't any evidence that anyone else has had this problem. Are there provisions in the claims processing manual that are inconsistent with the regulations? No, Your Honor. And in fact, I had – had also highlighted the same provision that Judge Fischer did here on page 5A of the addendum to appellant's reply brief, which makes clear that a beneficiary is one of the types of parties who may appeal. So there's nothing – they are arguing from the absence of a very specific provision in the manual. There's certainly nothing in the manual that precludes this type of appeal. And as set forth in the brief, in – the manual includes beneficiaries, and hospice beneficiaries are Part A beneficiaries. So they do fall within 42 CFR 405.924. And it's because they fall within the clear language of the regulations, and because the Secretary – to the extent it wasn't clear, which it is, the Secretary would be entitled to deference on the interpretation of her regulations. The fact that it is not specifically set forth in the manual doesn't hurt our position because it is – it's not excluded. In fact, the part – it's – and it is included within the general terms of the manual, for example, stating that a beneficiary may appeal. So your position is that the manual is silent on the issue, but there's no record of other people having this problem? That's right, Your Honor. Well, the – and I should – again, the manual does state that beneficiaries may appeal. It's clear that hospice beneficiaries are Part A beneficiaries, and there is no evidence that others have had these problems. Okay. Now, in the record, CMS, which administers Medicare programs, after the sequence of letters going back and forth, CMS responded saying that Mr. Back's appeal could not be filed because the hospice facility itself must file the claim. There was a letter, and that's from 1-800-MEDICARE, which is a contractor for CMS. And, yes, it is on CMS letterhead. And that – and that is – that, unfortunately, was incorrect information. Now, you say – you're saying, well, this is a one-off. Okay. Why wouldn't we infer that if CMS, which I get Medicare communications from in paper, and I think anybody on Medicare does, that that is the communication between the government and the claimant. If CMS is mistaken in this case, why can we not infer that they are mistaken in more than this case? And if so, what do we know about the correction of that error, which does not appear just to be a one-off? Well – That's a statement that it has to be filed by the hospice facility, which is not true. That could have been, Your Honor, an error by an individual who prepared that letter. It could have been. We don't – but we don't – we don't know that, and the Court doesn't have jurisdiction in this case to – The Court would have jurisdiction to do it if there is, in fact, no remedy, no way to pursue it. The only way that it became clear to this claimant was to file a lawsuit. So we have jurisdiction to determine our jurisdiction, and the concern here is that this is a catch-22. CMS gives out incorrect information to someone, and they don't go to court. They don't get a chance to exhaust because they're told they don't get out of the starting block. This claimant did. He went forward. And this – oh, excuse me, Your Honor. And this claimant can still go forward, and once he goes through the administrative process, these are the types – that doesn't preclude him from raising some of these types of issues in the – and, in fact, one of the whole points of exhaustion is to give the Secretary the opportunity to correct mistakes in the process. And Illinois Council also is very clear on that, that this is when – it's proceeding through the agency in this way provides the agency the opportunity to reconsider its policies, interpretations, and regulations in light of these challenges. So he needs to present – So that's the forum. That's the forum. And he has that open to him. Yes, he still has that open to him, and that he can present those at those times. Okay. So he can take that to the bank. Yes, he can. And, again, we regret the errors. Thank you. And I just want to point out the posture of this case. We're here on an appeal from a granting of a motion for judgment on the pleadings. And our argument is that – one of our main arguments is that under that motion,   we ask that you affirm the judgment of the district court. Under that standard, the district judge simply was in error. She could not assume that our view of the facts is wrong. In fact, she made the exact opposite assumption, whereas under the standard for judgment on the pleadings, the assumption has to be that the allegations of the non-moving party are correct. Well, it went to the jurisdiction of the court, actually, because if there is a process that hasn't been exhausted, and the act is clear that it has to be before we can get into the process. Your Honor, I don't think we even reached that issue for purposes of this appeal, because all we're asking now is to reverse the granting of the judgment on the pleadings and send it back to deal with those other issues. And if we're right that there is no administrative process existing, there's nothing to exhaust, and, therefore, the court would have jurisdiction. All right. Okay. Thank you. Thank you. Thank you, counsel, for the argument. Thank you, counsel.
judges: Gritzner, Noonan, Fisher